## AMITY E. NEWTON v. MARTIN DOYLE.

*Forcible entry—Peaceable possession.*

Where premises are really vacant, a party making a *bona fide* claim to the right of possession may enter if it can be done without disturbance, and can speedily found such a possession as will be entitled to recognition under Comp. L., § 6695, which forbids any entry upon lands except peaceably and by law.    But "peaceable possession" cannot be based on a nocturnal entry upon premises used and improved at the time and for several months previously under claim of title and with the intruder's knowledge.

Case made from Kent.    Submitted April 9.    Decided April 16.

FORCIBLE ENTRY AND DETAINER.    Complainant had judgment below.

*Williams & Harlan* for complainant.    One who complains of a forcible entry need only show actual possession at the time, and the defendant cannot show a want of title or right of possession in him, *Dutton v. Tracy,* 4 Conn., 94; *Smith v. Hollenback,* 51 Ill., 223; *Prewitt v. Burnett,* 46 Mo., 372; *Dilworth v. Fee,* 52 Mo., 130;

*Sanchez v. Loureyro*, 46 Cal., 641; *People v. Leonard*, 11 Johns., 504; every forcible entry is forbidden by statute, Comp. L., § 6695; *Hoffman v. Harrington*, 22 Mich., 52: 25 Mich., 146; the rightful owner may expel a trespasser if he can do so without committing a breach of the peace, *Bush v. Dunham*, 4 Mich., 346.

*Taggart & Wolcott* for defendant. A short possession obtained by nocturnal entry is not such peaceable possion as will support an action for forcible entry against one who interferes with it, *Harrington v. Scott*, 1 Mich., 17; *Seitz v. Miles*, 16 Mich., 456; *Bowers v. Cherokee Bob*, 45 Cal., 496; *Voll v. Butler*, 49 Cal., 75; occupation and use for improving the land and pasturing sheep is enough to constitute actual possession, *Bradley v. West*, 60 Mo., 59; *Goodrich v. Van Landigham*, 46 Cal., 601.

GRAVES, J. This is a case made after judgment. The proceeding was commenced by Mrs. Newton before a circuit court commissioner to recover of Doyle the possession of a farm of a hundred and twenty acres. She alleged in her complaint that on the 27th of March, 1877, she was in the quiet and peaceable possession of the farm and was well entitled to it; but that Doyle at that time unlawfully and with force and violence entered and ejected and expelled her therefrom and thereafter kept possession.

The commissioner gave judgment in her favor and Doyle appealed to the circuit court. The cause was then heard without a jury and judgment again passed for Mrs. Newton. The defendant contends· that the facts do not sustain the judgment. It allowed recovery of the whole farm and ordered restitution. It appears that Doyle owned and lived on an adjoining farm and that the premises in question were occupied for several years ·before June, 1876, by one Saul and his wife who claimed to own them; that about the ninth of that month Saul and wife gave Mrs.· Newton a quit claim

deed of the place. It recited a consideration of $2800 as follows: "Five hundred dollars down, and whatever balance there may be after satisfying the following described mortgages, viz.: one mortgage given to Martin Doyle of the township of Grattan, of three hundred dollars to the date of this instrument, and one mortgage in favor of one Pomeroy of the State of New York for about fifteen hundred and fifty dollars." It also appears that some time in the same month plaintiff's husband went upon the premises as her agent and "did some picking up of log heaps and stones and cutting or pulling weeds and afterwards sent his hired man and plowed some two or three acres on said premises." The land plowed was not used, but a plow and some other implements remained there until the next fall and after Doyle commenced improvements.

In the latter part of July, 1876, Doyle bought the premises of Luther Pomeroy. He had never been in possession but claimed title under a mortgage foreclosure. Doyle paid him $2500 and received a quit claim deed and this deed saved to Saul his crops then on the place and also the right for him to go on and harvest them.

Doyle notified Saul of his purchase and that he desired to occupy a part of the pasture land on the farm, and Saul consented thereto and assisted Doyle in putting up the fence between his growing crops and the pasture, and Doyle put his horses there. He also opened the fences between this and the adjoining place where he lived and turned in his stock and continued to use the place for pasturage until Saul's crops were harvested and when that occurred he pastured the whole. An old log house stood upon the place in which Saul lived and early in November, 1876, Saul moved out, and at that time defendant's wife bought of Mrs. Saul an old stove, and a table and bedstead of but little value were left with it in the old house. These articles had been previously given by Doyle to Saul.

Doyle set this stove up in the log house and upon his request and that of Mrs. Saul, his daughter cleaned the house after Saul and his wife moved out. After this Doyle closed the door and left the house with the old stove, together with the table and bedstead therein. The door was not fastened, there being no means to do so. The house was no further occupied until March 27, 1877, and there was no other building upon the place except a "ruined log barn."

In September, 1876, Doyle went on and cleared a portion of the premises of trees and brush to fit it for a crop of wheat the next season, and continued his improvements until stopped by snow. At that time he had cleared about twenty acres at a cost of some eight dollars per acre. This work was distributed in different places where it was needed. During the winter the fence between the two places continued open, and Doyle's sheep and other stock roamed at will over the premises in question and grazed there when the ground was sufficiently exposed to allow it. During all this time the plaintiff lived on a farm separated from that in question by a piece of land eighty rods wide, and from her house saw the work going on. In the fore part of March she consulted counsel in regard to her rights in the premises and as to whether she might take possession, and acting upon the advice received, she together with her family in the morning of March 27, 1877, proceeded to the old log house before mentioned with two loads of household goods and placed them in the house. The last load reached the house at the early hour of five o'clock in the morning, and the distance by the road from plaintiff's previous abode was about three-quarters of a mile. Plaintiff and her husband at once proceeded to arrange things for a permanent occupation. They had been in the house about three hours when they were interrupted by defendant. He found out about eight o'clock what had occurred and he immediately repaired with his sons to the log house and ordered plaintiff and

her husband to leave the premises. They refused, and defendant and his sons carried plaintiff's goods out of the house, and by threats of violence accompanied with the use of some slight degree of force, expelled plaintiff and her husband and family from the house, and plaintiff and her husband then removed their goods from the premises and left defendant in possession. The foregoing are the facts, and nearly in the language of the record, and they show the whole ground on which the court adjudged that plaintiff was in the quiet and peaceable possession of the entire farm and entitled thereto, and that defendant unlawfully expelled her. The case does not involve inquiry as to who had the better title. It concerns only actual possessory rights and the charge of unlawful disturbance. And for the purpose of this case the acts of defendant in depriving plaintiff on the 27th of March are not material unless she was at that time in actual peaceable possession. It appears that some months prior to her entry defendant took possession under a claim of right and with the express consent of the actual occupant who surrendered to him, and that he continued in possession down to the time of her entry. His occupation was evidenced by many visible facts and was unequivocal. It was not confined to any specific portion, but embraced the whole farm, including the old log house. It could not have been more distinct unless he had actually shifted his house to it from the place with which he in fact connected it for farm purposes. She knew all about the occupation by defendant, and must have known that it was under a claim of right. Under these circumstances and after advice, she resolved to get into possession. She accordingly made the night or very early morning entry into the log house and remained there until defendant was apprised that she had got in, when he proceeded to remove her without any delay. She succeeded in staying about three hours.

The construction due to the facts is that defendant

38 MICH.—82.

was in possession, and that in going to the log house the plaintiff sought to dispossess him. The proceeding amounted to an attempt to disseize defendant and was in no just sense the acquisition of a peaceable possession even of the old log house, much less of the entire farm. No.doubt when there is no occupation—when the possession is really vacant—a party making a *bona fide* claim to the right of possession may enter if the same can be done without disturbance, and very speedily found a possession entitled to recognition under this statute. But this is not such a case. Plaintiff was an intruder upon defendant's possession, and she never held a quiet and peaceable possession within the sense of this remedy.

The facts, therefore, do not sustain the judgment, and there must be a reversal and judgment here for the defendant with the costs of all the courts.

The other Justices concurred.