<div style="border:1px solid">6   72<br>43   643</div>

### F. W. KRANK, Respondent, *v.* JOHN NICHOLS ET AL., Appellants.

#### May 21, 1878.

1. Where a tenant holding under the owner of the fee abandons the premises, and delivers the keys to a holder of a deed of trust on the premises, who advertises and sells under the deed of trust, and, having become the purchaser at the foreclosure sale, takes possession by putting in a tenant of his own, this is an unlawful possession by disseisin; and, after written demand from the original owner, the purchaser under the deed of trust and his tenant are guilty of an unlawful detainer.

2. The abandonment of premises by the tenant is a restoration of the occupancy of the landlord.

3. The question of title cannot be raised when one is in by disseisin.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

H. N. HART and H. B. WILSON, for appellants, cited

*McCartney* v. *Alderson*, 45 Mo. 35 ; *Spaulding* v. *Mayhall*, 27 Mo. 377 ; *Reed* v. *Bell*, 26 Mo. 216 ; *Pentz* v. *Knester*, 41 Mo. 447 ; *May* v. *Luckett*, 48 Mo. 472 ; *Higgins* v. *Turner*, 61 Mo. 249 ; *Turner* v. *Baker*, 64 Mo. 245.

GOTTSCHALK, for respondent, cited *May* v. *Luckett*, 48 Mo. 474, and 54 Mo. 437.

LEWIS, P. J., delivered the opinion of the court.

This is an action of unlawful detainer. In December, 1873, the plaintiff borrowed $800 of defendant Nichols, for which he executed five several promissory notes, and a deed of trust securing them on the premises in controversy, situate in the city of St. Louis. In October, 1874, plaintiff moved to a farm in the country, leaving the premises in charge of defendant Nichols as his agent, with authority to rent, keep in repair, pay taxes, etc., and to account to plaintiff for any surplus of collections. In 1876, plaintiff requested Nichols to rent or lease the premises to Dr. Robinson. Nichols refused to have any agency in the matter ; whereupon plaintiff himself rented and delivered the premises to Robinson, collecting one month's rent in advance, and constituted Joseph Sichenger his agent in charge of the property, in the place of Nichols. Robinson moved out at the expiration of six weeks, and voluntarily delivered the keys to Nichols. Sichenger put up a bill, " For Rent," on the house, with direction to call upon him for particulars. He asked Nichols for the keys, and was at first told to go to Robinson for them. Upon another application, Nichols told him that he had the keys, and that the house was his property. On June 3, 1876, the property was sold under the deed of trust given by plaintiff to Nichols, and Nichols became the purchaser. On the same day, without the knowledge or consent of the plaintiff, he rented the premises to his co-defendant, and put him in possession.

Upon such a state of facts, it would be strange if there

could be found in a judgment for the plaintiff. The rules which control this form of proceeding, and the rights which it was framed to protect, are few and simple; yet they seem to require endless repetition by the courts, with but small hope of diminishing the flow of useless litigation. A fundamental principle is, to all appearance, perpetually lost sight of: it is, that however perfect may be a man's title to real property, however complete his right of entry or his right of possession, he cannot, by taking the law into his own hands, consummate his right while the property is in the peaceable occupancy of another. An intelligent application of this principle should leave little to be discussed in the present case.

When a lawful — that is, a peaceable — occupancy is found to exist, every legal presumption is in its favor. If the presumption of rightfulness is to be removed, it must not be by the strong hand, or by intrusion and dispossession. It must be done, if at all, by evidence before a court of justice, in a proceeding devised by the law for that purpose. The holder of the most absolutely perfect title, who disregards this precept, will be compelled to restore to his disseisee all the advantages of his original position before this can be made the subject of investigation. Forcible entry and detainer and unlawful detainer are the machinery provided by law to effect such a restoration.

An attempt is made in the present case to avoid the application of these, well-established rules by assuming that when defendant Nichols entered upon the premises either they were unoccupied or the possession was already in him. The position is untenable in every aspect. The constructive possession which is sometimes supposed to follow the title has no recognition in cases of this description. The delivery of the keys by Robinson to Nichols had no more significance than a delivery to a mere messenger or temporary custodian for the benefit of the landlord. Nichols was neither the landlord nor the agent of the land-

lord. The tenant could not surrender to him, nor could Nichols create a surrender where the tenant was powerless to make one. Nor were the premises, in legal contemplation, unoccupied. The abandonment by the tenant was, *ipso facto*, a restoration of the landlord's occupancy. In *May* v. *Luckett*, 48 Mo. 472, the plaintiff's tenant had abandoned the premises before the expiration of the lease, leaving the key in the door. Said the Supreme Court: " When the tenant leaves, either at the end of the term or by surrender of the lease, the landlord comes into sole possession, and he must be considered as possessed of the premises, though not personally present. And it is not the constructive possession alone, arising from title, for that is not sufficient to maintain this action, but a real possession arising from his relation as landlord, had when he put the tenant in, held through the tenant, and continued and become exclusive at the termination of the tenancy, and until he has time, by his acts, to indicate his intentions in regard to the possession." In that case, the defendant had entered under a valid sheriff's deed conveying the interest of the plaintiff. The case reached the Supreme Court a second time (54 Mo. 437), when the court, referring to the defendant, said: "After thus being guilty of an unlawful detainer, he has no right to protect his possession by a sheriff's deed, nor by any other deed for the premises, whether made by the plaintiff or by some other person holding the real title. The question of title cannot be raised where a party is in possession by disseisin." The case furnishes an exact parallel with the one before us.

Reference is made, in argument, to the statutory provisions concerning attornment by a tenant, and those concerning derivative titles. They have no application to the present case. Here is no controversy between landlord and tenant, or between parties claiming under either in that relation. As to the law of derivative titles, it has no direct application in unlawful detainer, except in behalf of a

plaintiff upon whose grantor or predecessor a right of action had previously devolved. It has an indirect application in favor of a tenant defendant whose landlord has made a conveyance from which it may be inferred that the tenant has attorned with the landlord's consent. *Pentz* v. *Kuester*, 41 Mo. 447. It may doubtless be similarly invoked by a tenant whose attornment is specially authorized by the statute. Wag. Stats. 880, sect. 15. But there is no fact in the present case which could make that law available for any purpose of the defendant.

The judgment for the plaintiff was right, and we find no error in the record. All the judges concur in affirming the judgment.