*280 The opinion of the court was delivered by
"Valentine, J.:
This was an action of forcible entry and detainer, brought by A. M. Burdette against P. H. Corgan, before a justice of the peace of Allen county. The defense set up in the defendant’s pleading was a general denial, and that he held possession of the premises rightfully, as the tenant of the person who was the rightful and legal owner of the property. The case was removed to the district court, where it was tried by the court without a jury; and the court made the following findings of fact and law, to wit:
“1. E. R. Russell had had charge of the premises in question from sometime in 1875, until the time of the entry in question.
“2. From 1875 until a short time prior to the entry complained of, one J. H. Lewis claimed to own said premises.
“ 3. A short time prior to the entry complained of, Russell ' was instructed by Mr. Keplinger, attorney for Burdette, to' take charge of the premises for Burdette. Prior to and at the date of said instructions, Russell had learned that Lewis had conveyed to Burdette, and he knew that Burdette had visited the land prior to such alleged purchase.
“4. Prior to receiving said instructions and since 1875, Russell had had control of said premises by authority of an arrangement with said J. H. Lewis, by which Russell was to have the use of the land in consideration of his improving the same. There was no definite time for the termination of said arrangement.
“ 5. After receiving said instructions, Russell had control of the premises for Burdette and by such authority as said instructions from. Burdette’s attorney gave, and he supposed his authority from Lewis terminated when Lewis sold to Burdette; and thereafter Russell was not Burdette’s tenant, but supposed himself 'to be his agent.
“6. Russell lived about one and a half miles from the premises in question, and visited them from 1875 to the time of the entry, two or three times a week down to the time of the entry.
“7. In 1875 Russell leased the premises to one Gilbert Lewis, who remained thereon until the time of defendant’s entry. During the time of the continuance of said lease, *281 Russell paid Gilbert five dollars per month for taking care of stock and other property which Russell had on the place.
“8. On the 20th day of August, 1879, Russell bought all of Gilbert Lewis’s crops on the place, and at the same time, or a few days later, but not later than September 2d, an agreement was made between Russell and Lewis by which Lewis was to give up the place shortly. Lewis’s daughter-in-law, who was living with him as part of the family, was sick. According to Russell’s testimony, Lewis was to stay until Russell wanted the place, which according to Lewis he was to leave the last of September. By this agreement Lewis was to take care of Russell’s stock on the place up to the time of his leaving, in consideration of fuel and continued occupancy of the house on the place.
“ 9. Until after the entry, Gilbert Lewis had never heard of J. H. Lewis or Burdette, but always supposed Russell owned the land.
“10. A short time prior to the entry complained of, G. P. Smith, an attorney at law, who was attorney and agent for certain parties claiming title to the premises adverse to plaintiff’s grantor, Lewis, learned from the records that Lewis had conveyed the premises to Burdette. He immediately went to the premises the day before the last of September, 1879; was informed by Gilbert Lewis that he had occupied as tenant of E. R. Russell, but that his time had expired, and he would move as soon as he could get a house.
“11. At that time G. P. Smith had charge of an adjoining farm, which was then occupied by one P. H. Corgan, the defendant, as a renter. Said Smith soon after, and on the first day of October, 1879, rented the premises in dispute to Corgan, and rented the premises formerly occupied by Corgan to Gilbert Lewis; and by the terms of the leasing, possession of both places was to be given as soon as they could exchange houses.
“12. Corgan and a married son of Lewis’s living with Lewis, made an arrangement by which the two families were to assist each other in moving. Corgan had lived for one year on a farm adjoining the land in dispute, and always prior to his leasing from Smith supposed the land in dispute belonged to Russell, and at the date of the entry both Corgan and Lewis understood that Corgan’s entry would be under a title adverse to Russell, and that the entry of Corgan was without Russell’s knowledge and against his wish, and Corgan *282 supposed if he did not enter without Russell’s knowledge he would not at all.
“ 13. On the morning of October 2, Corgan had moved all his things except some minor articles of trifling value upon the premises in dispute, together with all his family, by 8 or 9 o’clock, and one load of Lewis’s property had been moved to the place left by Corgan.
“ 14. The wagons carrying Corgan’s property were drawn across the field along a field road, and entered the premises in dispute by driving across a two-year-old hedge. Lewis and Corgan assisted in unloading Corgan’s goods and reloading Lewis’s goods in the same wagons. Two wagons were used, one belonging to Corgan, the other to William Smith, a son of G. P. Smith, who then lived with and constituted a part of G. P. Smith’s family.
“ 15. About 8 or 9 o’clock A. M., Oct. 2d, Russell arrived at the place and found all Corgan’s family, also all of Gilbert Lewis’s family, in the house. Everything was in confusion and torn up. No bedsteads or stoves were up. He ordered Corgan and Corgan refused to go, and said he was there by authority of G. P. Smith. Russell went away, and soon returned bringing with him a young colored man in his employ. Russell went with the colored man into the house, and told the colored boy to hold possession for him, Russell. Russell also put some plows and cultivators inside the house, and then went away. The colored man brought his dinner with him, and ate inside the house.
“16. About one or two o’clock G. P. Smith came to the premises and found the young colored man in the house on the premises, and was informed that he had been placed there by Russell to hold possession for Russell. Smith told him to come out, and he immediately went out of the house and waited in the yard until Russell returned.
“17. Soon after, Russell returned, andas he approached, Smith asked Corgan if he wished Russell to enter the house. Corgan replied he had no business with Russell. Smith then picked up a stick, and stood in the door and ordered Russell not to enter. Smith then told Russell if he tried to force his way in he would brain him. Russell again attempted to, and Smith struck him with the stick. A son of Smith present took hold of Russell, and urged him not to try to enter or his father would surely kill him. Russell and the colored boy then went away. At this time all of Lewis’s *283 family had left the house, except a daughter-in-law, who with her husband had for months lived with Gilbert Lewis as one of the family, and all of Gilbert Lewis’s things except some chickens, ducks, old barrels and a kitchen table, had been taken away.
“The deed from Lewis to Burdette was executed Sept. 16, 1876, and recorded Sept. 24,1879, and was a quitclaim deed.
“There was due service of the preliminary notice.
“As a conclusion of law, the court finds that the defendant is entitled to judgment against the plaintiff for costs, and that the plaintiff herein is not the real party in interest.”
It will be seen from the foregoing facts that the defendant, Corgan, took possession of the premises in controversy as a mere intruder, a trespasser, and a wrong-doer, without color of right. At first it'was his intention, with the aid of Smith and in collusion with Lewis, who was in possession of the property under Russell, to take possession of the property merely through fraud, in the absence of Russell and without his knowledge, or the knowledge of any person under whom Russell claimed; but force becoming necessary, he resorted to force, and obtained the possession of the property through force as well as fraud, and then held it by force, It is true that he did not personally resort to personal violence; nor was it necessary that he should do so, in order to constitute his intrusion a forcible entry; but Smith, his principal associate and coadjutor — indeed the prime mover in the unlawful enterprise — did use personal violence.
It is claimed that the defendant did not know that Burdette owned the land. Now, constructively, he did know it, (see act relating to conveyances, § 20;) for Burdette’s deed was on record at the time he made his unlawful entry; and Smith, his principal coadjutor, knew it almost absolutely, for he had examined the records with reference thereto, previous to that time.
It is also claimed that none of the confederates in this unlawful undertaking had any knowledge that Russell was the mere agent of Burdette. It is claimed that even Smith did not know this, but that he supposed that Russell had some *284 right to the premises as a tenant or otherwise, which would continue at least until the first of March succeeding. (See brief of defendant in error.)
Now, we do not think that it makes any difference that the parties did not know just, what the rights and interests of Burdette were. When parties combine or conspire together to commit an unlawful act, and then carry their purpose into execution, they must be prepared to take all the consequences of their wrong-doing. When parties undertake to injure A, and in doing so also injure B, they cannot plead as a defense that they had no intention of injuring B. When parties set out to commit an unlawful act, they cannot plead that they did not know that it would injure the person whom in fact it did injure.
It is also claimed that Burdette had no such possession of the property as will enable him to maintain the action of forcible entry and detainer. Now he was certainly in possession of the property, by his agent, Russell; -and that was sufficient. (DeGraw v. Prior, 53 Mo. 313.) And an abandonment of premises by the tenant is a restoration of the occupancy of the landlord, and the landlord comes into sole possession of the premises by such abandonment, although he may not be personally present. (May v. Luckett, 48 Mo. 472; Krank v. Nichols, 6 Mo. App. 72.)
But it is further claimed, that Russell was not the agent of Burdette, but was his tenant. This, we think, is contrary to the findings of the court below; and it is certainly against the understanding of both Burdette and Russell. They supposed that Russell was in fact the agent of Burdette, although it may have been an agency coupled with an interest. And they both believed that Burdette was the proper party to bring this action; for the action was commenced in the name of Burdette, and the complaint was sworn to by Russell as the agent of Burdette. It is probable, however, that either of them had such a possession of the property, and such an interest therein, that either might maintain the action of forcible entry and detainer to recover the same; and we *285 certainly think that Burdette had such possession and such interest, and therefore that he may maintain the action. Mere wrong-doers are seldom encouraged in making nice distinctions and raising difficult and embarrassing questions, to defeat an action brought against them by a person who has been injured by them) and who apparently has the right to sue them, when they have no other ground for so doing than that some other person may also have been injured, and may have an action against them. Usually, any person who is injured by their wrongful acts may bring the action. In this case, both Burdette and Russell were injured. But evidently Russell did not think that he was sufficiently injured, or had sufficient interest in the subject-matter of the controversy to compensate him for his time and trouble and expense in bringing and prosecuting an action for such injury; and probably he would have abandoned the premises to the defendant, Corgan, if Burdette had not interfered. Then what shall Burdette do? May he maintain the action of forcible entry and detainer to recover the possession of his property; or must he resort to the more tedious action of ejectment with its two trials, and longer delays, and this, too, to obtain possession of his property from a mere wrong-doer? Russell’s possession was Burdette’s possession; and Burdette was, in fact, in possession by Russell when the defendant made his entry on the premises. But even where an entry is made in the absence of the party entitled to the possession, and afterward he appears, and the party making the entry keeps him out of the possession by force — this is sufficient to authorize the party entitled to the possession to maintain the action of forcible entry and detainer against the w^ong-doer. (Steinlien v. Halstead, 42 Wis. 422; Ainsworth v. Barry, 35 Wis. 136; Newton v. Doyle, 38 Mich. 645. Seé also Campbell v. Coonradt, 22 Kas. 704; Coonradt v. Campbell, 25 Kas. 227.)
Of course we are now speaking of land which has been in the actual occupation, personally or by agent, of the person claiming to have been ousted, and not vacant and unoccupied *286 land which has never been in the actual occupation of anyone, or which-has never been improved or put in cultivation. In the present case we think the plaintiff, Burdette, might maintain the action as an action of forcible entry only, or as an action of forcible detainer only. The action of forcible entry requires that the entry and ouster be forcible, but it may be maintained against any person who commits a forcible entry and ouster, even if he were the owner of the property and entitled to the immediate possession; while the action of forcible detainer requires that the possession be not only forcible, but also unlawful; and if the possession is forcible and unlawful, then the action of forcible detainer may be maintained against the party holding the possession, although his original entry and possession may have been ever so peaceable and.rightful and lawful. In the present case the plaintiff’s possession was rightful and lawful, and the defendant’s entry and detainer were both forcible and illegal, and without even any color of right.
The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendant for the possession of the property, and for costs.
All the Justices concurring.